1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ADVANCED STEEL RECOVERY, LLC,          No. 2:16-cv-00148-KJM-EFB

12              Plaintiff/Counter-defendant,     ORDER

13        v.

14   X-BODY EQUIPMENT, INC., JEWELL
     ATTACHMENTS, LLC, J.D.M.L., INC.
15   dba STANDARD INDUSTRIES, and
     ALLSTATE PAPER & METAL
16   RECYCLING CO., INC.,

17              Defendants/Counterclaimants.

18

19            Plaintiff Advanced Steel Recovery (ASR) sues defendants X-Body Equipment,

20   Inc. and Jewell Attachments, LLC,[1] alleging defendants' "Acculoader" product infringes ASR's

21   patent.  On February 1, 2018, the court conducted a hearing in accordance with *Markman v.*

22   *Westview Instruments, Inc.*, 517 U.S. 370 (1996).  Mark Nielsen and C. Wood Pak appeared for

23   ASR, and Robert Harkins appeared for defendants.  Through this order, based on the entirety of

24   the record before it, the court construes the disputed words and phrases found in claims 1, 4, 5

25   and 7 of the patent-in-suit, U.S. Patent No. 9,056,731 (the '731 Patent).

26   _____

27        [1] ASR also sues Standard Industries and Allstate Paper & Metal Recycling Co., but these
     parties have been independently severed from the present case, and proceedings have been stayed
28   with respect to both Standard and Allstate.  ECF No. 23.

                                          1

I.      BACKGROUND

    A.      First Amended Complaint

        On August 23, 2016, ASR filed its First Amended Complaint, alleging defendants' "Acculoader" infringes plaintiff's '731 Patent.  First Am. Compl. (FAC) ¶¶ 18, 24, ECF No. 44.

        The '731 Patent, titled "Container Packer System and Method," was filed on November 22, 2011.  '731 Patent, ECF No. 79-1, Ex. B.  The '731 Patent is based on a continuation-in-part (CIP) application following U.S. Patent No. 8,061,950 (the '950 Patent), which itself was a CIP application of U.S. Patent No. 7,744,330 (the '330 Patent).  *Id.*  A "continuation-in-part" application is a new patent application filed by the original patent applicant, which repeats a substantial part of the earlier application, but adds to or subtracts from claims disclosed in a substantially similar earlier application.  35 U.S.C § 120; *Phigenix, Inc. v. Genentech Inc.*, 238 F. Supp. 3d 1177, 1180 (N.D. Cal. 2017).  The '950 Patent was filed on June 29, 2010.  ECF No. 28-1, Ex. 2.  The '330 Patent was filed on June 13, 2008.  *Id.* Ex. 1.[2]

        ASR alleges "claims 1, 4, 5, and 7 of the [']731 [P]atent . . . are entitled to an effective filing date of June 13, 2008, which is the filing date of the application for the '330 Patent."  FAC ¶ 22.  "Effective filing date" is a synonym for priority date, which can include the filing date of a substantially similar earlier application.  35 U.S.C. § 100 ("effective filing date" includes "the earliest application for which the patent or application is entitled").  ASR also alleges "disclosures in both the application for the '330 Patent and the application for the '950 Patent are sufficient to comply with the written description requirement with respect to all of the limitations contained in at least claims 1, 4, 5, and 7 of the '731 Patent."  FAC ¶ 22.  Under the written description requirement, the patent specification at issue "must clearly allow persons of ordinary skill in the art to recognize that the inventor invented what is claimed."  *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc) (internal citations and alterations omitted); *see* 35 U.S.C. § 112 ("The specification shall contain a written description of

_____

        [2] The court judicially notices these patent applications.  *See GeoVector Corp. v. Samsung Elecs. Co.*, 234 F. Supp. 3d 1009, 1016 n.2 (N.D. Cal. 2017) (courts may take judicial notice of patents in pertinent part because they are publicly available government records).

the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor or joint inventor of carrying out the invention."). Here, ASR alleges certain limitations in the earlier '950 and '330 Patents complied with the written description requirement applicable to the '731 Patent because they adequately disclosed several limitations carried over into the '731 Patent. FAC ¶ 22.

The First Amended Complaint alleges defendants began to infringe the '731 Patent by making and selling the Acculoader in or about August 2011, after the "effective filing date" of the '731 Patent, "which is June 13, 2008." *Id.* ¶ 25.

B. Procedural History

On September 12, 2017, the court issued an order denying defendants' motion to dismiss, defendants' motion for summary judgment, and defendants' motion for sanctions. ECF No. 73 at 1. As part of that order, the court identified an issue precluding summary judgment: "the proper construction of the claim term 'structural rails.'" *Id.* at 12. "Because there is a genuine dispute of material fact regarding the proper scope and meaning of the term 'structural rails,' a *Markman*[3] hearing [was required] before a motion for summary judgment is ripe." *Id.* at 13.

ASR has submitted an opening brief on claim construction. Pl.'s Br., ECF No. 88. Defendants submitted their own claim construction brief, Defs.' Br., ECF No. 90, and ASR replied, Reply, ECF No. 92. ASR also submitted a notice of supplemental authority. Pl.'s Notice. Suppl. Auth., ECF No. 100, asserting the "authority may be helpful" to the court in deciding claim construction issues. *Id.* at 2. Defendants did not file a response to ASR's notice of supplemental authority.

The court now construes the disputed words and phrases found in claims 1, 4, 5 and 7 of the '731 Patent. The parties have submitted numerous evidentiary objections along with

---

[3] *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd* 517 U.S. 370 (1996)

their briefs.  *See* ECF No. 90-6, 92-2.  The court addresses any evidentiary objections to evidence relied on below, as necessary to clarify the record.  To the extent any declaration statements offer legal conclusions, the court disregards those statements.

II.  LEGAL STANDARD

The court construes patent claims as a matter of law based on the relevant intrinsic and extrinsic evidence.  *See Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc).  "Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim."  *Id.* at 1316 (internal quotation marks, citation omitted).  Accordingly, a claim should be construed in a manner that "stays true to the claim language and most naturally aligns with the patent's description of the invention."  *Id.*

In construing disputed terms, a court looks first to the claims themselves, for "[i]t is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'"  *Id.* at 1312 (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)).  Generally, the words of a claim should be given their "ordinary and customary meaning," which is "the meaning that the term[s] would have to a person of ordinary skill in the art in question at the time of the invention."  *Id.* at 1312-13.  A "person of ordinary skill is a hypothetical person who is presumed to be aware of all the pertinent prior art."  *Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc.*, 807 F.2d 955, 962 (Fed. Cir. 1986).  In some instances, the ordinary meaning to a person of skill in the art is clear, and claim construction may involve "little more than the application of the widely accepted meaning of commonly understood words."  *Phillips*, 415 F.3d at 1314.

In many cases, however, the meaning of a term to a person skilled in the art will not be readily apparent, and a court must look to other sources to determine the term's meaning.  *See id.*  Under these circumstances, a court should consider the context in which the term is used in an asserted claim or in related claims and bear in mind that "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the

4

specification." *Id.* at 1313. The specification "is always highly relevant" and "[u]sually . . . dispositive; it is the single best guide to the meaning of a disputed term." *Id.* at 1315 (quotation omitted). Indeed, "the only meaning that matters in claim construction is the meaning in the context of the patent." *Trs. of Columbia Univ. v. Symantec Corp.*, 811 F.3d 1359, 1363 (Fed. Cir. 2016). Where the specification reveals that the patentee has given a special definition to a claim term that differs from the meaning it would ordinarily possess, "the inventor's lexicography governs." *Phillips,* 415 F.3d at 1316. Likewise, where the specification reveals an intentional disclaimer or disavowal of claim scope by the inventor, the inventor's intention as revealed through the specification is dispositive. *Id.* However, while the specification may describe a preferred embodiment, the claims are not necessarily limited only to that embodiment. *Id.* at 1323; *see also Prima Tek II, L.L.C. v. Polypap, S.A.R.L.*, 318 F.3d 1143, 1151 (Fed. Cir. 2003) ("The general rule, of course, is that claims of a patent are not limited to the preferred embodiment, unless by their own language.").

In addition to the specification, a court may also consider the patent's prosecution history, which consists of the complete record of proceedings before the U.S. Patent and Trademark Office ("PTO") and includes the cited prior art references. The prosecution history "can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Phillips,* 415 F.3d at 1317.

A court is also authorized to consider extrinsic evidence in construing claims, such as "expert and inventor testimony, dictionaries, and learned treatises." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). Expert

/////

/////

/////

/////

/////

testimony may be particularly useful in providing

> background on the technology at issue, . . . explain[ing] how an invention works, . . . ensur[ing] that the court's understanding of the technical aspects of the patent is consistent with that of a person of skill in the art, or . . . establish[ing] that a particular term in the patent or the prior art has a particular meaning in the pertinent field.

*Phillips*, 415 F.3d at 1318.  Although a court may consider evidence extrinsic to the patent and prosecution history, such evidence is considered "less significant than the intrinsic record" and "less reliable than the patent and its prosecution history in determining how to read claim terms."  *Id.* at 1317-18 (internal quotation marks and citations omitted).  Thus, while extrinsic evidence may be useful in claim construction, ultimately "it is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence."  *Id.* at 1319.  Any expert testimony "that is clearly at odds with the claim construction mandated by the claims themselves, the written description, and the prosecution history" will be significantly discounted.  *Id.* at 1318 (internal quotation marks, citations omitted).

III.     DISCUSSION

    A.     Terms For Which Construction Agreed Upon

        The parties have agreed on the appropriate construction for three claim terms and have requested the court to construe those terms as follows:

| Claim Term | Claims Implicated | Agreed-Upon Construction |
|---|---|---|
| Transport container | 1, 4, 5 and 7 | a container for moving material from one geographic location to another (such as a commercial shipping container) |
| adapted for / configured for | 1 and 4 | designed to allow, facilitate, or cause a component to perform or accomplish a stated function |
| extended position | 1 and 4 | a position extending at least partially from said transfer base distal end |

        The court accepts these constructions and construes the above claim terms as described.

**B.**     <u>Preamble</u>

Defendants contend the preamble of claim 1 and the preamble of claim 4[4] are

limiting, or a requirement of those claims.  Defs.' Br. at 11-14.  Defendants argue subparts of

claims 1 and 4 use the phrase "said transport container," referring back to the term's first use with

"a" or "an" in the preamble of claim 1 and preamble of claim 4.  *Id.* at 12.  "[W]ithout the

preamble being a meaningful part of the claims, there would be no antecedent basis."  *Id.* at 12-

13.  Defendants refer to the prosecution history as further evidence, given that "[t]he patent

examiner rejected claims specifically because the preamble set forth the transport container,

which was required to serve as an antecedent basis for other parts of the claims."  *Id.* at 13 (citing

ASR's Request for Judicial Notice (Pl.'s RJN), ECF No. 88-1, Ex. 8 at 2[5]).

ASR contends these preambles are not limiting because "the transport container is

merely an environmental feature to provide context in which the claimed invention is to be used."

Pl.'s Br. at 6.  Further, "[t]he body of the claim sets forth a structurally complete invention."  *Id.*

The system comprises a "transfer base" and "container packer," each comprising smaller

components.  The patent specification, detailed description of the preferred embodiments and

figures all support the transport container being a feature of the environment that explains "the

purpose of the container packer being in the extended position."  *Id.* at 6-8.  Lastly, ASR disputes

the relevance of defendants' cited prosecution history because "the preamble was not relied upon

to distinguish over the prior art."  *Id.* at 8-9.  Although ASR concedes "the claim body does rely

on the preamble for antecedent basis," ASR argues three other factors weigh against the preamble

as limiting.

---

[4] Claim 1 and claim 4 have identical preambles: "A system for packing bulk material in a transport container through an end opening of the transport container, which system comprises . . . ."  '731 Patent, col. 10:56-59 (claim 1 preamble), 13:31-33 (claim 4 preamble).

[5] The court takes judicial notice of this document under Federal Rule of Evidence 201 as a matter of public record.  Here, the document was "obtained through the publicly available PAIR [Patent Application Information Retrieval] system on the United States Patent and Trademark Office website."  Pl.'s RJN at 3; *see Lee*, 250 F.3d at 689; *Preciado v. Wells Fargo Home Mortgage*, No. 13–00382, 2013 WL 1899929, at *3 (N.D. Cal. May 7, 2013) (taking judicial notice in part because the information was "obtained from a governmental website").

The preamble for claim 1 and preamble for claim 4 identify "[a] system for packing bulk material in a transport container through an end opening of the transport container, which system comprises . . . ." '731 Patent, col. 10:56-59, col. 13:31-33.  Multiple subparts of claims 1 and 4 use the phrase "said transport container."  For instance, claim 1[i] states, "said transfer base being configured for placement with said transfer base distal end positioned adjacent to said transport container end opening."  *Id.* col. 11:22-23.  Claim 1[j] refers to a transport container directly, stating, "said transport container being configured for receiving at least a portion of said container packer with said container packer in its extended position."  *Id.* col. 11:25-27.  And claims 1[k] and 4[j] refer to "said push blade assembly . . . configured for compacting bulk materials in said transport container."  *Id.* col. 11:28-35, col. 13:64-14:4.

"Whether to treat a preamble as a limitation is a determination 'resolved only on review of the entire[] . . . patent to gain an understanding of what the inventors actually invented and intended to encompass by the claim.'"  *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002) (citation omitted).  "In general, a preamble limits the invention if it recites essential structure or steps, or if it is 'necessary to give life, meaning, and vitality' to the claim."  *Id.* (citation omitted).  However, "a preamble is not limiting 'where a patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention.'"  *Id.* (citation omitted).

Although "[n]o litmus test defines when a preamble claim limits scope. . . . [s]ome guideposts . . . have emerged from various cases discussing the preamble's effect on claim scope."  *Id.* (citations omitted).  These guideposts include: (1) when the claim body depends "on a particular disputed preamble phrase for antecedent basis"; (2) "when the preamble is essential to understand limitations or terms in the claim body"; (3) "when reciting additional structure or steps underscored as important by the specification"; or (4) "clear reliance on the preamble during prosecution to distinguish the claimed invention from the prior art."  *Id.* at 808-09; *see also USHIP Intellectual Properties, LLC v. United States*, 98 Fed. Cl. 396, 410, *aff'd*, 714 F.3d 1311 (Fed. Cir. 2013).  "[A]s a general rule preamble language is not treated as limiting."  *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1347 (Fed. Cir. 2012).

The court considers each of the four guideposts below.

       1.     Antecedent Basis

Discussing the preambles of claims 1 and 4, which as noted above are identical, ASR concedes "the claim body does rely on the preamble for antecedent basis," but contends defendants provide no authority "for the proposition that where a term in a preamble serves as antecedent basis for the same term later in the claim, [] the preamble is therefore limiting as a matter of law." Reply at 5.

There appears to be no authority supporting a single guidepost identified in *Catalina Marketing* as sufficient to find a preamble limiting. Applying the test laid out in *Catalina Marketing*, the court does not find a "transport container" to be an "essential structure" for the invention described in the claim body. *See Catalina Mktg.*, 289 F.3d at 808. The patent specification, under the detailed description of the preferred embodiments, distinguishes "[a] transport container 8"[6] from "the container packer 6" and "[t]he system 2" which "generally comprises a transfer base 4 reciprocally and slidably mounting a container packer 6." '731 Patent, col. 3:49-54. The detailed description headings do not signal the transport container to be an essential structure, either: the headings include "Introduction and Environment," "Transfer Base 4," Container Packer 6," "Operation," and "Alternative Embodiment or Aspect Container Packer System 102." *Id.* col. 3:27, 56; *id.* col. 4:20; *id.* col. 5:4, 48-49. Figures also show system 2 pointing directly at the transfer base 4 and container packer 6, but away from the transport container 8. '731 Patent, Figs. 1, 2. Moreover, the patent's "abstract" does not describe the transport container as part of the invention. *E.g.*, '731 Patent, ECF No. 79-1 at 21 ("A container packer system includes a transfer base, which receives a container packer adapted for movement longitudinally between retracted and extended positions with respect to the transfer base."); *see also id.* col. 1:57-61 (summary of invention, stating in part "a container packer system is provided with a transfer base, which receives a container packer adapted for movement longitudinally between retracted and extended positions with respect to the transfer base").

---

[6] As explained in the '731 Patent, numerals, such as "8," serve as references to locations identified by number in the design drawing figures. '731 Patent, col. 3:49-50.

Although the "container packer 6" is listed at one point in the detailed description as including in part "the transport container 8," this one reference in the detailed description does not rebut the multiple distinctions between "the system 2" and "the transport container 8." *See* '731 Patent, col. 4:22-25; *but see id.* col. 3:49-54 (distinguishing both "container packer 6" and "[t]he system 2" from "transport container 8"); *id.* Figs. 3-4, 6-8 (depicting container packer 6 without showing transport container 8); *id.* Fig. 5 (depicting container packer 6 traveling toward a transport container 8 not depicted); *id.* Fig. 10 (depicting container packer 6 and transport container 8 as distinct). The court applies these observations in considering the remaining guideposts below.

### 2. Preamble Essential to Understanding Limitations or Terms

Defendants assert "the preamble of claims 1 and 4 add a necessary component of the claimed invention, and the body of the claim does not set out the complete invention if the preamble is disregarded." Defs.' Br. at 12. Specifically, "claim 4 never discusses the transport container having an end opening through which the bulk material is received for packing, so the claim is not complete without the preamble." *Id.* And "[c]laim 1 also refers to the preamble, so it too requires the preamble to give complete meaning to the claim." *Id.* ASR replies that the preamble "is not essential to understanding the claim body." Reply at 6.

The court does not find the preamble essential to understanding the claims. Claim 1's reference to the preamble does not render the preamble essential to understanding claim 1. The body of claim 4, omitting that the transport container has an end opening, is not essential to understanding the components of the transfer base and container packer, or to understanding that "compacting bulk material in said transport container" would require "said transport container" to have some form of opening for bulk material.

### 3. Additional Structure or Steps Underscored as Important by the Specification

Defendants maintain "the transport container is clearly a critical part of the claims as well," stating "the entire purpose of the invention is 'for packing bulk material in a transport container.'" Defs.' Br. at 15. ASR replies the preamble "merely states the purpose of the

invention and is not actually part of the invention" and "the specification does not identify the transport container to be important."  Reply at 6.

Here, *Catalina Marketing* is instructive: "[A] preamble is not limiting 'where a patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention.'"  289 F.3d at 808.  In this case, the claim preamble states a purpose "for" the system before describing that system: "packing bulk material in a transport container through an end opening of the transport container."  '731 Patent, col. 10:56-59, col. 13:31-33.  Although claim 1[j] refers to a transport container "configured for receiving at least a portion of said container packer within its extended position," the patent specification does not indicate the properly configured transport container is anything more than a proper environment for the invention. *See id.* col. 3:27, col. 49-54, 56; *id.* col. 4:20; 5:4, 48-49; *id.* col. 11:25-27; Figs. 1-8, 10.  In other words, "[o]n review of the entire[] . . . patent," the court finds the claim body "defines a structurally complete invention." *Catalina Mktg.*, 289 F.3d at 808 (citations omitted).

        4.    <u>Clear Reliance on the Preamble During Prosecution to Distinguish Claimed Invention from Prior Art</u>

Defendants assert "[t]he patent examiner rejected claims specifically because the preamble failed to set forth the transport container, which was required to serve as antecedent basis for other parts of the claims."  Defs.' Br. at 13 (citing Pl.'s RJN, Ex. 8 at 2).  ASR concedes, as discussed above, the amendment to the preamble for antecedent basis.  Reply at 5.  However, ASR contends "the preamble was not relied upon during the patent prosecution." *Id*. at 6.  Specifically, "the preamble was amended for antecedent basis issues, which is basically a formality." *Id*.

Defendants' citation to the prosecution history reveals a change in terminology from "shipping container" to "transport container."  Pl.'s RJN, Ex. 8 at 2.  Yet the document making the amendment indicates that none of the preamble amendments discussed above was relied on to distinguish the invention from prior art.  Pl.'s RJN at 13, 16 (acknowledging amending claim 1 "to provide proper antecedent basis for 'said transport container' and 'said

transport container end opening'" and noting claim 4 "was not rejected based on art."). Thus, the court finds no clear reliance during prosecution on the claim preamble to distinguish prior art.

Because the claim preamble at issue does not recite essential structure or steps, the preamble merely describes the purpose of the invention and the claim body describes a structurally complete invention, the court finds the preamble does not limit the claims.

### C. Collateral Estoppel

ASR contends defendants are collaterally estopped from arguing for claim construction of four disputed terms. Pl.'s Br. at 1, 9-10 & n.3, 14, 16, 18-19, 25-26. These disputed terms are "distal end with an opening," "interior," "compacting said bulk material in said transport container" and "retracted position." *Id.* at 1-2. In support of its position, ASR refers to a prior district court opinion construing the '950 Patent. *See, e.g.*, *id.* at 9 (citing Pl.'s RJN, Ex. 1); *Advanced Steel Recovery, LLC v. X-Body Equip., Inc.*, No. 2:12-CV-01004-GEB, 2013 WL 4828152, at *1 (E.D. Cal. Sept. 9, 2013).

Defendants argue the '731 Patent did not exist when the prior district court opinion issued; the '731 Patent is only a continuation-in-part patent with new figures and text; defendants were not entitled to appeal the claim construction order separately after prevailing on noninfringement at summary judgment; and the Federal Circuit declined to reach defendants' claim construction arguments because it affirmed summary judgment on noninfringement. Defs.' Br. at 10.

In reply, ASR asserts "[t]he disclosures in the patents in the [p]rior [l]itigation are subsumed within the disclosure of the '731 Patent in this case." Reply at 2. ASR also asserts the '731 Patent's status as a CIP application "is not dispositive regarding collateral estoppel." *Id.* Last, ASR rebuts defendants' argument about the lack of an opportunity to appeal.

Courts "apply the law of the regional circuit to the issue of collateral estoppel" of claim construction orders. *Novartis Pharm. Corp. v. Abbott Labs.*, 375 F.3d 1328, 1333 (Fed. Cir. 2004) (citation omitted); *see In re Freeman*, 30 F.3d 1459, 1465-69 (Fed. Cir. 1994); *Internat'l Gamco, Inc. v. Multimedia Games, Inc.*, 732 F. Supp.2d 1082, 1090 (S.D. Cal. 2010). In the Ninth Circuit, collateral estoppel applies in a patent case if: "(1) the issue necessarily

decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party in the first proceeding." *Neev v. Alcon Labs., Inc.*, No. SACV 15–00336 JVS(JCGx), 2016 WL 9051170, at \*12 (C.D. Cal. Dec. 22, 2016); *see Hydranautics v. FilmTec Corp.*, 204 F.3d 880, 885 (9th Cir. 2000).

"Collateral estoppel also applies to common issues in actions involving different but related patents." *Mycogen Plant Sci., Inc. v. Monsanto Co.*, 252 F.3d 1306, 1310 (Fed. Cir. 2001), *overruled on other grounds*, 535 U.S. 1109 (2002); *Nestle USA, Inc. v. Steuben Foods, Inc.*, 884 F.3d 1350, 1352 (Fed. Cir. 2018) (holding collateral estoppel applied to claim construction for new patent where "[n]either party" pointed "to any material difference between the two patents or their prosecution histories that would give rise to claim construction issues in this appeal different from those raised in the prior appeal"). Courts have applied collateral estoppel in instances in which "the parties are asking the court to construe the same term already . . . construed by other judges with respect to related patents." *Nazomi Commc'ns, Inc. v. Nokia Corp.*, No. C-10-04686 RMW, 2013 WL 2951039, at \*5 (N.D. Cal. June 14, 2013), *aff'd sub nom. Nazomi Commc'ns, Inc. v. Microsoft Mobile Oy*, 597 F. App'x 1075 (Fed. Cir. 2014).

As a threshold matter, regarding the first collateral estoppel element, defendants' reliance on *e.Digital Corp. v. Futurewei Techs., Inc.*, 772 F.3d 723, 727 (Fed. Cir. 2014), is unavailing. There, the Federal Circuit held "a court cannot impose collateral estoppel to bar a claim construction dispute solely because the patents are related." *Id.* However, the Federal Circuit acknowledged "[e]ach case requires a determination that each of the requirements for collateral estoppel are met, including that the issue previously decided is identical to the one sought to be litigated." *Id.* The Federal Circuit explicitly contemplated "[a] continuation-in-part" as an example, stating a CIP application "may disclose new matter that could materially impact the interpretation of a claim, and therefore require a new claim construction inquiry." *Id.* Defendant has not provided any examples of the '731 Patent's introduction of new matter that would affect the prior court's construction of the words "distal end with an opening," "interior,"

"compacting said bulk material in said transport container" or "retracted position." The court itself has not located any instances of new matter.

The court does find the second and third elements of collateral estoppel—a final judgment on the merits and the same parties against whom estoppel is asserted in the previous proceeding—satisfied here. *See Advanced Steel Recovery, LLC v. X-Body Equip., Inc.,* No. 2:12-CV-1004-GEB-DAD, 2014 WL 3939356, at *7 (E.D. Cal. Aug. 11, 2014), *aff'd*, 808 F.3d 1313 (Fed. Cir. 2015) (granting summary judgment); *Advanced Steel Recovery*, 2013 WL 4828152, at *1 (X-Body Equipment, Inc. and Jewell Attachments, LLC as named defendants in claim construction order); *see also Mpoyo v. Litton Electro-Optical Systems*, 430 F.3d 985, 988 (9th Cir. 2005) (summary judgment dismissal considered decision on merits). The court therefore continues to analyze the first element, to determine whether the issues decided in the previous proceeding were identical to those sought to be relitigated here.

1. Distal End with an Opening

The parties dispute the same term construed by the court in the previous litigation: "distal end with an opening." *See Advanced Steel Recovery*, 2013 WL 4828152, at *8-9; ECF No. 79-1, Ex. A at 2-5. In the previous litigation, ASR proposed a "[p]lain and ordinary meaning," and ASR—the plaintiff in both actions—takes that position again now. *Advanced Steel Recovery*, 2013 WL 4828152, at *8; ECF No. 79-1, Ex. A at 2. The issue decided here is therefore identical to the previous litigation. *See Neev v. Alcon Labs., Inc.*, No. SACV 15–00336 JVS(JCGx), 2016 WL 9051170, at *12 (C.D. Cal. Dec. 22, 2016) (finding "issues decided at [previous] proceeding are identical" where previous court previously construed same terms).

Additionally, the intrinsic evidence previously analyzed by the court in the claim language and patent specification is similar if not identical to that in the patent-in-suit. *Compare* '950 Patent, col. 4:62-63 (stating in claim 1[a] "a transfer base including proximate and distal ends") *with* '731 Patent, col. 13:34 (same); c*ompare* '950 Patent, col. 5:4 (stating in claim 1[c] "said transfer base distal end") *with* '731 Patent, col. 10:67 (same); c*ompare* '950 Patent, col. 5:34-35, 42-43, Figs. 1, 2 *with* '731 Patent, col. 11:30, col. 12:52-54, Figs. 1, 2. The previous court order construing "distal end with an opening" relied on the foregoing '950 Patent citations.

*See Advanced Steel Recovery*, 2013 WL 4828152, at *8-9.  Defendants even advance the same argument rejected by the court in the previous litigation, that "distal end with an opening" must be a "structure."  *See* Defs.' Br. at 16-17; *Advanced Steel*, 2013 WL 4828152, at *8; *see also Nazomi Commc'ns*, 2013 WL 2951039, at *5-6 (applying collateral estoppel despite "claims of the[] patents differ[ing]" because "all of the patents share a common specification").

To the extent the '731 Patent includes any new embodiments, the '731 Patent includes the same disclaimer made in the '950 Patent, that embodiments are merely examples. *Compare* '950 Patent, col. 4:55-58 ("It is to be understood that while certain embodiments and/or aspects of the invention have been shown and described, the invention is not limited thereto and encompasses various other embodiments and aspects.") *with* '731 Patent, col. 3:29-32; *see also Advanced Steel Recovery*, 2013 WL 4828152, at *9.

Thus, collateral estoppel applies to this issue, and the court adopts the same construction as the previous court: "The disputed claim term 'distal end with an opening' is readily understood when given its plain and ordinary meaning . . . .  Therefore, this claim term need not be construed." *Advanced Steel Recovery*, 2013 WL 4828152, at *9.

2.     Interior

Parties dispute the term "interior" construed by the court in the previous litigation, citing to the same claim language in both the '950 Patent and the '731 Patent. *Compare Advanced Steel Recovery*, 2013 WL 4828152, at *9-10 ("A container packer including a proximate end, a distal end with an opening, opposite sidewalls, a floor and an interior"), *with* ECF No. 79-1, Ex. A at 6 ("A container packer including a proximate end, a distal end with an opening, opposite sidewalls, a floor and an interior adapted for receiving bulk material."). Moreover, the detailed descriptions in the previous litigation patent and the patent-in-suit both refer to "container packer interior 46" with identical depictions in embodiments. *Compare* '950 Patent, col. 3:35, 42, 49-50, 57; *id.* col. 4:42; *id.* Figs. 5, 8 *with* '731 Patent, col. 4:29, 43, 50-51; *id.* 5:24-25, 33-34; *id.* Figs. 5, 8.  Collateral estoppel therefore applies to this issue as well, and the court adopts the same conclusion as the previous court: "[T]he disputed claim term 'interior' does not require construction and therefore need not be construed." *Advanced Steel Recovery*,

15

1    2013 WL 4828152, at *10 (citing *Aero Prods. Int'l, Inc. v. Intex Recreation Corp.*, 466 F.3d

2    1000, 1011 n.5 (Fed. Cir. 2006)).

3                    3.    Compacting Bulk Material in Said Transport Container

4           The parties also dispute the same term construed by the court in the previous

5    litigation: "compacting bulk material in said [transport] container." *Compare Advanced Steel*

6    *Recovery*, 2013 WL 4828152, at *12-16, 19 *with* ECF No. 79-1, Ex. A at 10.  The court in the

7    previous litigation rejected defendants' proposed reliance on the '330 Patent's prosecution history

8    to support defendants' construction of another term featuring the phrase "compact the entire

9    volume of bulk material" as "[c]ompletely compress the bulk material." *Advanced Steel*

10   *Recovery*, 2013 WL 4828152, at *14-16.  Here, defendants rely on the same quoted language in

11   the '330 Patent prosecution history to propose a construction of "[c]rushing bulk material together

12   between structures to make a smaller, condensed bundle inside the transport container."  ECF

13   No. 79-1, Ex. A at 10; *compare* ECF No. 79-1, Ex. A at 11 (citing '330 Patent prosecution

14   history) *with Advanced Steel Recovery*, 2013 WL 4828152, at *14 (same); *see also* Pl.'s RJN, Ex.

15   7 at 9 ('330 Patent prosecution history).  As the court in the previous litigation observed, the '330

16   Patent prosecution history did not distinguish from prior art "based on the degree to which the

17   invention's blade compacts the bulk material," but rather based on filling "the entire volume of

18   the container packer" and that the push blade "can move the entire volume of bulk material in one

19   full extension of its hydraulic arm." *Advanced Steel Recovery*, 2013 WL 4828152, at *15

20   (citation omitted).  That court concluded the prosecution history supported ASR's argument that

21   the claim term "does not define the degree to which th[e] bulk material would have to be

22   compressed," *id.* at *15, and declined to adopt defendants' offered construction using the word

23   "compress," *id.* at *16.

24          Because collateral estoppel applies here as well, the court declines to adopt

25   defendants' proposed construction using the word "[c]rushing."  However, the court in the

26   previous litigation clarified the language in dispute with the following construction: ". . .

27   compacting bulk material in the [transport] container for moving material from one geographic

28   location to another." *Id.* at *14, 19.  The court therefore adopts this construction as well.  *See*

| | |
|---|---|
| 1 | *Nazomi Commc'ns*, 2013 WL 2951039, at *5-6 (applying collateral estoppel despite "claims of |
| 2 | the[] patents differ[ing]" because "all of the patents share a common specification"). |
| 3 |         4.     <u>Retracted Position</u> |
| 4 | The parties dispute the term "retracted position," also involving the same claim |
| 5 | language construed by the court in the previous litigation. *Compare Advanced Steel Recovery*, |
| 6 | 2013 WL 4828152, at *10, *with* ECF No. 79-1, Ex. A at 7. In the previous litigation, the court |
| 7 | applied the '950 Patent's embodiment disclaimer to reason that Figure 1's depiction of the |
| 8 | container packer fully on the transfer base was merely one example of the retracted position. *See* |
| 9 | *Advanced Steel Recovery*, 2013 WL 4828152, at *11. The same patent specifications are present |
| 10 | here. *See* '731 Patent, col. 3:29-32, Fig. 1. As in the previous litigation involving the '950 |
| 11 | Patent, the '731 Patent contains "no reference to the size of the transfer base relative to the size of |
| 12 | the container packer." *Advanced Steel Recovery*, 2013 WL 4828152, at *11. Thus, collateral |
| 13 | estoppel applies, and the court does not adopt defendants' proposed construction here, that a |
| 14 | retracted position "is not extended at least partially beyond the transfer base distal end." *See id.*; |
| 15 | *see also* ECF No. 79-1, Ex. A at 7. Because the prior court construed "retracted position on said |
| 16 | transfer base" as "retracted position at least partially on said transfer base," the court does so here |
| 17 | as well. |
| 18 | Finding collateral estoppel applies to all four claims, the court construes the claims |
| 19 | as construed in the previous litigation for the reasons explained above. The court next construes |
| 20 | the remaining three disputed words and phrases. |
| 21 | ///// |
| 22 | ///// |
| 23 | ///// |
| 24 | ///// |
| 25 | ///// |
| 26 | ///// |
| 27 | ///// |
| 28 | ///// |

1    D.    Mounted

2        The parties dispute the use of the word "mounted." Each party offers its own

3    construction:

| Claim Term | Claims Implicated | ASR's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|---|
| Mounted | 1, 4, 5 and 7 | ASR believes that the plain and ordinary meaning of this claim language is clear on its face and does not require construction. If, however, this term is construed, ASR proposes the following construction:<br><br>"positioned about or being supported by" | "Attached." |

12        1.    The Claim Language

13        Claims 1 and 4 contain the word "mounted" in two locations: once involving "a

14    material transfer assembly mounted in said container packer interior," and another time involving

15    "a pair of structural rails each mounted on a respective container packer sidewall interior face."

16    '731 Patent, col. 11: 5-6, 38-40; *id.* col. 13:48-49; *id.* col. 14:7-9. Claims 5 and 7 refer to "an

17    hydraulic power source mounted on said transfer base."

18        ASR argues the use of "mounted on" shows "that 'mounted' does not necessarily

19    require a physical attachment or fixation between two components." Pl.'s Br. at 21. ASR

20    contrasts "mounted language" with the use of "affixed" elsewhere in the patent. *Id.* at 21-22;

21    '731 Patent, col. 11:12-13. According to ASR, "mounted" therefore does not require fixation or

22    attachment. Pl.'s Br. at 22. Defendants assert one of ordinary skill in the art would understand

23    "mounted" in this context means "attached." Defs.' Br. at 24.

24        Examining the claim language, the court finds, as explained below, defendants'

25    proposed construction could contradict at least some instances of the claim language's use of

26    "mounted." Although defendants' construction could apply to some uses of "mounted," notably

27    when components are "mounted in" another component, the word "attached" does not cover all

28

18

1    instances of "mounted on," a relationship between components that does not necessarily require

2    attachment.

3              2.        The Patent Specification

4              ASR contends "[i]n each instance the term 'mounted' is used, one component is

5    supported by another component." Pl.'s Br. at 22. Because "the same term must be construed in

6    the same manner, the construction of the term 'mounted' must be consistently applicable to all

7    uses in the '731 Patent" absent reason to depart from this maxim. *Id.* (footnote and citations

8    omitted). ASR cites multiple uses of "mounted." *Id.* Defendants observe "[t]he term 'mounted'

9    is used more than a dozen times in the '731 patent specification" and assert "in each instance

10   [mounted] refers to something attached and not simply positioned." Defs.' Br. at 25.

11             The court notes multiple uses of "mounted" in the patent specification: "movably

12   mounted in," "slidably mounted by," "mounted on" and "mounted in." '731 Patent, col. 2:2-5; *id.*

13   col. 3:51-55; *id.* col. 4:22-63; *id.* col. 6:54-48. Adopting defendants' proposed construction of

14   "attached" would create an inconsistency with the usage of "mounted" throughout the patent

15   specification, especially in examples such as the transfer base "reciprocally and slidably mounting

16   a container packer." *Id.* col. 3:52-53; *see Georgia-Pac. Corp. v. U.S. Gypsum Co.*, 195 F.3d

17   1322, 1331 (Fed. Cir. 1999), *opinion amended on reh'g*, 204 F.3d 1359 (Fed. Cir. 2000) ("Unless

18   the patent otherwise provides, a claim term cannot be given a different meaning in the various

19   claims of the same patent."). On review of the patent specification, the court discerns no "special

20   meaning" to the term "mounted." *See Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283,

21   1291 (Fed. Cir. 2015).

22             3.        Prosecution History

23             ASR asserts, "[t]here does not appear to be anything in the file history . . . that

24   would warrant a narrowing or deviation from the plain and ordinary meaning of the claim

25   language." Pl.'s Br. at 23. Defendants also do not direct the court to any prosecution history.

26   *See* Defs.' Br. at 24-26.

27

28

### 4. Extrinsic Evidence

ASR argues extrinsic evidence is not required to construe this claim term. Pl.'s Br. at 23. However, to the extent the court considers extrinsic evidence, ASR offers the expert declaration of Fred Smith. *Id.* (citing Smith II Decl. ¶ 18, ECF No. 88-3). Smith discusses the relationship between mounting and a component's degrees of freedom: "When a first component is mounted on a second component, at least one of the six degrees of freedom of the first component has been limited." Smith II Decl. ¶ 18.[7] "Specifically, a free component can translate in three dimensions (front-back, up-down, and side-to-side), and it can rotate about three separate axes (yaw, pitch, and roll)." *Id.* Smith provides one simple example of "anyone that has mounted a horse" having "at least the up-down degree of freedom restricted, but would also know they are [*sic*] not attached to the horse." *Id.*

Smith's explanation highlights the varied uses of "mounted," including "mounted in," "mounted on," "movably mounted," and "slidably mounted" found in the claim language and the patent specification. And dictionary definitions of "mount" include "to seat or place oneself on," "to put or have in position," "to set on something that elevates," "to attach to a support" and "to arrange or assemble for use or display." *See* Merriam-Webster Dictionary "Mount" (n.d. Web. July 16, 2019); *see Schaefer Fan Co. v. J & D Mfg.*, 265 F.3d 1282, 1288–89 (Fed. Cir. 2001) (approving district court use of dictionaries to determine ordinary meaning). Smith's explanation of mounting as restricting at least one of the "six degrees of freedom" comports with these dictionary definitions and different uses of "mounted" in the '731 Patent.

Although defendants offer evidence that "[a]ttached" is the "most commonly used" meaning of "mounted" in mechanical engineering, Defs.' Br. at 25 (citing to declaration

---

[7] Defendants object to Smith's testimony related to the disputed term "mounted." *See* ECF No. 90-6 at 16. The court overrules this objection as to the material cited in this order, finding the cited evidence highly relevant in light of the various uses of "mounted" in the claim language and patent specification. Additionally, the court has reviewed Smith's declaration, including the description of his "30 years of experience in the fields of mechanical engineering, and new product development," curriculum vitae, list of patents, and previous experience as an expert witness. *See* Smith II Decl. ¶ 2, Exs. 1-3. The court finds Smith a proper expert witness. At hearing, the court confirmed the parties did not request voir dire or an opportunity to cross examine declarants. *See* ECF No. 99.

and same dictionary definitions the court reviewed above), the use of the word "attached" cannot account for all uses of "mounted" in the claim language and patent specification. Construing "mounted" as "attached" would contradict the intrinsic evidence considered above.[8]

Considering all intrinsic and extrinsic evidence, the court concludes the disputed claim term "mounted" is readily understood when given its plain and ordinary meaning. Thus, the term does not require construction.

E.    Structural Rails and Rollers

The parties dispute the following terms:

| Claim Term | Claims Implicated | ASR's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|---|
| pair of structural rails each mounted on a respective container packer sidewall interior face | 1 and 4 | "structures that run horizontally along the sidewalls of the container packer capable of guiding the push blade assembly through longitudinal movement (or a fore-and-aft direction) from a retracted position to an extended position" | "Two rails that support the structural load of the push blade and are mounted on the inside faces of the two sidewalls of the container packer" |

---

[8] ASR "objects to the entirety of the Stevick Declaration" in part because Stevick is too qualified—he is a person of "extraordinary," not ordinary skill, in the art—and because ASR believes opposing counsel drafted the Stevick Declaration, or that defendants' counsel directly copied from the Stevick Declaration into defendants' claim construction brief. *See* ECF No. 92-2 at 18-22. ASR has requested striking the entire declaration, that the court issue an order to show cause requiring defendants to make a showing that the Stevick Declaration was driven by Stevick and not counsel, or a "short deposition by ASR to cross-examine" if necessary. *Id.* at 22. Because the court does not rely on the Stevick Declaration, it overrules these objections and denies the request with respect to the instant motion. The court notes, however, that ASR's objection to Stevick as too qualified is not well-taken. *See Norgren Inc. v. Int'l Trade Comm'n*, 699 F.3d 1317, 1325 (Fed. Cir. 2012) ("Because the person having ordinary skill in the art is a 'theoretical construct' and is 'not descriptive of some particular individual,' 'a person of *exceptional* skill in the art' should not be disqualified because he or she is 'not ordinary enough.'") (citing *Endress + Hauser, Inc. v. Hawk Measurement Sys. Pty. Ltd.*, 122 F.3d 1040, 1042 (Fed. Cir. 1997) (emphasis in original)).

| | | | |
|---|---|---|---|
| pair of rollers each engaging a respective container packer structural rail and configured for guiding said push blade | 1 and 4 | ASR believes the plain and ordinary meaning of this claim language is clear on its face and does not require construction. If, however, this term is construed, ASR proposes the following construction:<br><br>"rolling devices that are adjacent to and arranged to abut the structural rails to help or facilitate movement of the push blade forward and backward through the container (retracted and extended position)" | "Two rollers apply the load of the push blade assembly to the structural rails, and the rollers are configured to direct the movement of the push blade" |

1.    The Claim Language

Claim 1 and 4 both recite, "said container packer including a pair of structural rails each mounted on a respective container packer sidewall interior face," and "said push blade assembly further including at least a pair of rollers each engaging a respective container packer structural rail and configured for guiding said push blade through longitudinal movement between its extended and retracted positions." '731 Patent, col. 11:38-45; *id.* col. 14:7-14.

ASR contends its proposed construction captures the features of "the location of the structural rails, the purpose or function of the structural rails, and the orientation of the structural rails in light of its purpose." Pl.'s Br. at 30. ASR contends the plain and ordinary meaning of "[r]ollers" in the above claim language "is readily discernible by a person of ordinary skill in the art." *Id.* at 35. Defendants argue "[o]ne of skill in the art would understand that the pair of structural rails as appearing in claims 1 and 4 of the '731 patent refers to two rails that support the structural load of the push blade . . . ." Defs.' Br. at 32.

ASR's proposed construction does not give force to the word "engaging" for the rollers in the claim language. Rather, its proposed construction, that the rolling devices "are adjacent to and arranged to abut the structural" does not convey any "engaging" of the structural rail. In other words, ASR's proposed construction effectively eliminates one key aspect of the

claim term and disregards "the basic patent law doctrine that every limitation of a claim is material." *Flex-Rest, LLC v. Steelcase, Inc.*, 455 F.3d 1351, 1361 (Fed. Cir. 2006).

## 2. The Patent Specification

ASR asserts the patent specification reveals "structural rails" and "tracks" to be the same term. Pl.'s Br. at 30-32. Specifically, it says, "[b]ecause the location, function, and orientation of the tracks 49 is the same as the location, function, and orientation of the structural rails, tracks 49 and structural rails must be the same element." *Id.* at 32. The various depictions in figures of locations for tracks 49, tracks 149, and structural rails 153 are merely examples of structural rails taking on "different forms" and being "located at different positions." *Id.* at 33. According to ASR, "[u]nless the claims expressly recite these specific locations or forms, the claims are not limited to those specific locations and forms." *Id.* ASR makes similar arguments in support of its proposed construction of "rollers." *See id.* at 36-37.

Defendants distinguish the references to "structural rails" in the '731 Patent from previous patents and from references to "tracks" at other locations in the '731 Patent. Defs.' Br. at 32-34. The structural rails "hold the structure of the push blade in place while it moves, which was never discussed or disclosed prior to the '731 patent application." *Id.* at 34.

ASR asserts it is a "physical impossibility" that the structural rails support the structural load of the push blade. Pl.'s Br. at 35 (emphasis removed). ASR also asserts it is "a physical impossibility" for the rollers "to convey the structural load of the push blade to the structural rails" in the embodiment at Figure 12, which "shows rollers 161 underneath structural rail 153 to prevent the push blade 154 from rising upwardly." *Id.* at 38 (emphasis in original). Defendants respond that rollers could place a load on the structural rails if pushed from below, stating "[i]f matter becomes wedged under the [push] blade, that can cause the load to be applied upward, and the load of the push blade is applied to the rails to stop the upward motion and allow the push blade to move in and out of the transport container." Defs.' Br. at 35.

There are references to "structural rails 153" in both the patent specification and figures. *See* '731 Patent, col. 7:25-34; *id.* Fig. 12. The '731 Patent also maintains references to "tracks 49" and "tracks 149" that "guide[]," including a reference to "tracks 149" in the paragraph

23

just before reference to "structural rails 153." *See, e.g.*, *id.* col. 4:44-45; 7:8-34; *see also* '330 Patent, col. 3:43, 51 ("tracks 49"). Courts presume different claim terms to have different meanings. *Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1382 (Fed. Cir. 2008). Here, "tracks 149" are distinct from the "structural rails 153" as depicted in Figure 12, an embodiment not present in the '330 Patent or '950 Patent. *See* '731 Patent, Fig. 12; ECF No. 28-1, Exs. 1-2 ('330 Patent and '950 Patent). Figure 8, present in all three patents, depicts "tracks 49" in the same location as "tracks 149." Although the claims are not necessarily limited to the single embodiment in Figure 12 or the embodiment in Figure 8, *Phillips,* 415 F.3d at 1323, these embodiments further support the written descriptions in the patent specification as referring to distinct claim terms.

Additionally, the '731 Patent uses the word "structural" elsewhere. *See* '731 Patent, col. 4:41; *id.* col. 7:5 ("structural framework"); *id.* col. 6:65-67 ("[s]tructural container packer support beams"); *id.* col. 10:33-34 ("structural cross beams"). Specifically, the detailed description recites, "Structural container packer support beams 222 may be incorporated to strengthen the container packer structure, or the sidewalls of the container packer may be substantially reinforced to eliminate the need of support beams along the top of the packer assembly." *Id.* col. 6:65-7:3. These uses of "structural" only reinforce the meaning of "structural" in the disputed claim terms as something more than guiding. ASR's proposed construction does not distinguish between "structural rails" and "tracks," which conflicts with the claim term language and the patent specification.

### 3. Prosecution History

ASR asserts the prosecution history "supports a broader construction" of "structural rails" and "rollers" than ASR has proposed "because the claim containing this limitation was not rejected based on the prior art." Pl.'s Br. at 33, 37 (citing Pl.'s RJN, Ex. 8 at 13). Although ASR is correct about the prosecution history, this fact does not alter the court's analysis of the claim term language and patent specification above.

4.    Extrinsic Evidence

ASR contends it is not necessary to rely on extrinsic evidence. Pl.'s Br. at 33. If the court does consider such evidence, however, ASR offers a declaration from Fred Smith, in support of the same arguments asserted by ASR above as to patent specification. *See id*. at 33-34, 37-38; Smith I Decl. ¶¶ 19, 21-28, ECF No. 58-5.

Defendants offer a declaration from Dr. Paul Wright, Ph.D., who contends the "structural rails" limitations and their associated rollers "are based on matter that was . . . not in prior applications," differing from the use of "tracks" in prior applications. *See* Wright Decl. ¶¶ 17-23, 26-29, ECF No. 51.[9] Wright distinguishes "guide rails" from "structural rails" as understood by "one of skill in the art" because guide rails "do not have to support a structure; they only need to guide something." *Id.* ¶ 32.

At hearing, defendants also referred to the Maul declaration submitted in support of defendants' motion to dismiss, motion for summary judgment and motion for sanctions. *See* Maul Decl., ECF No. 50. Maul, who has worked with a different shipping container loader product, explains his personal observations that the Acculoader's "additional features" were not part of the design of the product with which he was more familiar. *Id.* ¶¶ 3, 5, 7. Specifically, Maul observed the Acculoader's "use of structural rails and rollers that would engage those structural rails," resulting in the device's packer blade working "in conjunction with horizontal structural rails that extended into the interior of the container packer." *Id.* ¶ 7. Maul reviewed the '731 Patent after observing the Acculoader, stating "the Acculoader design kept the packer blade from riding upward and lifting off the floor as it pushed material into the shipping container." *Id.* ¶ 8. Maul stated the push blade lifting vertically "was a problem" with the other machines with which he was familiar. *Id.* "In the pre-April 2011 design of the [other product], the packer blade was riding up and material was getting jammed between the blade and the floor . . . ." *Id.*

---

[9] The court acknowledges ASR's objections to the Wright Declaration. *See* ECF No. 58-2 at 47-60. As to ASR's objection to paragraph 18 of the Wright Declaration and ASR's second and third general objection, the court need not reach those objections given the court's current analysis. *See id.* at 48-49, 50-51. The court overrules ASR's other objection that Wright is "beyond a person of ordinary skill in an art." *See id.* at 47-48; *Norgren*, 699 F.3d at 1325.

Because the claim language and patent specification distinguishes "structural rails" from other "tracks" that guide, and because extrinsic evidence further supports this distinction, the court adopts defendants' proposed constructions for structural rails and rollers.

F.     Priority Date

Defendants contend the court can determine the '731 Patent's priority date once the court has conducted its claim construction. Defs.' Br. at 8. ASR argues priority date analysis is not properly part of the claim construction phase of proceedings. Reply at 3-4. Although "[d]etermination of a priority date is purely a question of law if the facts underlying that determination are undisputed," *Bradford Co. v. Conteyor N. Am., Inc.*, 603 F.3d 1262, 1268 (Fed. Cir. 2010), the court finds the single paragraph each party devotes to the issue insufficient to support resolution at this time. *See* Defs.' Br. at 8; Reply at 3-4.

IV.     CONCLUSION

For the reasons above, the court construes the preamble as not limiting and the words and phrases found in claims 1, 4, 5 and 7 of the patent-in-suit as follows:

| Claim Term | Claims Implicated | Construction |
|---|---|---|
| Transport container | 1, 4, 5 and 7 | "a container for moving material from one geographic location to another (such as a commercial shipping container)" |
| adapted for / configured for | 1 and 4 | "designed to allow, facilitate, or cause a component to perform or accomplish a stated function" |
| extended position | 1 and 4 | "a position extending at least partially from said transfer base distal end" |
| distal end with an opening | 1 and 4 | The term does not require construction. |
| interior | 1 and 4 | The term does not require construction. |
| compacting bulk material in said transport container | 1 and 4 | "compacting bulk material in the transport container for moving material from one geographic location to another" |
| retracted position | 1 and 4 | "retracted position on said transfer base" is construed as "retracted position at least partially on said transfer base" |
| mounted | 1, 4, 5 and 7 | The term does not require construction. |

| | | |
|---|---|---|
| pair of structural rails each mounted on a respective container packer sidewall interior face | 1 and 4 | "Two rails that support the structural load of the push blade and are mounted on the inside faces of the two sidewalls of the container packer" |
| pair of rollers each engaging a respective container packer structural rail and configured for guiding said push blade | 1 and 4 | "Two rollers apply the load of the push blade assembly to the structural rails, and the rollers are configured to direct the movement of the push blade" |

IT IS SO ORDERED.

DATED:  July 19, 2019.

_____
UNITED STATES DISTRICT JUDGE