UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Advanced Steel Recovery, LLC, | No. 2:16-cv-00148-KJM-JDP |
| Plaintiff, | ORDER |
| v. | |
| X-Body Equipment, Inc. and Jewell Attachments, LLC, | |
| Defendants. | |

     This is a patent case.  The patent holder, Advanced Steel Recovery, LLC (ASR), moves to dismiss several counterclaims by the alleged infringers, X-Body Equipment, Inc. and Jewell Attachments LLC.  Those counterclaims sound in fraud and must therefore meet the heightened pleading standard of Rule 9(b).  They do not.  X-Body and Jewell have not described the circumstances of the alleged fraud with particularity, and in several instances, their allegations also fall short of the more lenient standard of Rule 8.  The motion is **granted without leave to amend**.

I.     BACKGROUND

     ASR owns three related patents.  *See* First Am. Compl. ¶ 16, ECF No. 44.  All three describe methods for loading shipping containers with scrap metal or similar material.  *See, e.g.*,

1

*id.* Ex. 1 at 1:15–53. ASR alleges in this case that X-Body and Jewell infringed the third patent, No. 9,056,731 (the '731 patent). *See id.* ¶ 18. According to ASR's complaint, Jewell manufactures the allegedly infringing machine: the "Acculoader." *See id.* ¶ 20. Jewell sells Acculoaders to X-Body, who resells them. *Id.* X-Body and Jewell claim the Acculoader does not infringe ASR's patent, and they have asserted several counterclaims against ASR. *See generally* Second Am. Countercl., ECF No. 134. X-Body and Jewell advance the same arguments and claims, so the court refers to them together as X-Body in this order.

This is the second patent infringement action between ASR and X-Body about the same device and the same patent family. ASR filed the first infringement case in this court in 2012. *See generally* Compl., Case No. 12-cv-1004 (E.D. Cal. Apr. 16, 2012), ECF No. 1. Another judge of this court granted summary judgment of noninfringement in favor of X-Body in 2014 but denied X-Body's motion for attorneys' fees under 35 U.S.C. § 285. *See generally* Order Granting Defs.' Mot. Summ. J., No. 12-cv-1004 (E.D. Cal. Aug. 11, 2014), ECF No. 70; Order Denying Attorneys' Fees Mot. (E.D. Cal. Jan. 29, 2015), ECF No. 95. The Federal Circuit affirmed the order granting summary judgment; the order denying fees was not part of the appeal. *See generally* 808 F.3d 1313 (Fed. Cir. 2015).

The '731 patent was issued while the previous action was still pending, and ASR filed this action in 2016, soon after the previous case concluded. Since then, this court has issued several orders, including on claim construction and summary judgment. *See, e.g.*, Order (July 19, 2019), ECF No. 101; Order (Oct. 13, 2020), ECF No. 132. The court also dismissed several of X-Body's counterclaims with leave to amend in a previous order. *See* Prev. Order at 7–8, ECF No. 131. The court determined that these counterclaims sounded in fraud and, for that reason, could not move forward without particularized allegations describing the circumstances of the alleged fraud. *See id.*; Fed. R. Civ. P. 9(b).

X-Body has now amended its counterclaims. As before, all of the counterclaims rest on a similar theory: X-Body alleges ASR is a "vexatious litigant" who has filed frivolous claims of patent infringement, all based on the Acculoader and the same three patents, in an attempt to harass X-Body, increase its costs, and steal its customers. *See* Second Am. Countercl. at 3–4,

2

¶¶ 10–11.[1] X-Body claims the Acculoader clearly does not infringe on any of ASR's patents, and it alleges the '731 patent is unenforceable and invalid, among other reasons because that patent is a copy of the Acculoader, which was prior art. *See, e.g., id.* at 3, ¶¶ 4–8.

X-Body also alleges ASR has threatened X-Body's customers with frivolous patent infringement claims. *See, e.g., id.* ¶¶ 41–45. It describes two threats particularly. First, on July 16, 2015, ASR's CEO sent a letter to an X-Body customer threatening a patent infringement lawsuit if the customer did not stop doing business with X-Body. *See, e.g., id.* ¶ 42. Second, on March 29, 2019, ASR's counsel sent a letter to another customer threatening legal action if the customer continued doing business with X-Body. *See, e.g., id.* ¶ 43. X-Body's other claims of threats are all generic and alleged only on "information and belief." *See, e.g., id.* ¶¶ 44–46.

ASR now moves to dismiss. *See generally* Mot., ECF No. 137; Mem., ECF No. 137-1. Its motion targets seven of X-Body's counterclaims:

- In counterclaims 4 and 5, X-Body alleges ASR negligently and intentionally interfered with current and prospective economic relationships between X-Body and its customers, *see* Second Am. Countercl. ¶¶ 38–64.
- In counterclaim 7, it alleges defamation, *see id.* ¶¶ 74–84;
- In counterclaim 8, it alleges commercial disparagement, *see id.* ¶¶ 85–96;
- In counterclaim 9, it claims ASR violated the Lanham Act, *see id.* ¶¶ 97–106;
- In counterclaim 10, it alleges unfair competition in violation of California Business & Professions Code section 17200 and Oregon Revised Statutes 646.607, *see id.* ¶¶ 107–14; and
- Finally, in counterclaim 11, X-Body alleges ASR has attempted to create a monopoly in violation of the Sherman Act, *see id.* ¶¶ 115–195.

ASR has attached copies of the letters it sent to X-Body's two customers, which it argues should be incorporated into the complaint by reference. *See* Nielsen Decl. Ex. 1, ECF No. 137-2; Frankel Decl. Ex. 1, ECF No. 137-3. ASR argues it is immune to X-Body's counterclaims

---

[1] X-Body's counterclaim includes some duplicate paragraph numbers. The court cites both page numbers and paragraph numbers when necessary to avoid ambiguity.

3

because its patent litigation is a good-faith attempt to petition the government—that is, the courts—for relief. ASR also contends X-Body's allegations have again fallen short of Rule 9(b) and the more general pleading standards of Rule 8. X-Body opposes and disagrees on each point. *See generally* Opp'n, ECF No. 138. The matter is now fully briefed and the court submitted it without oral argument. *See* Reply, ECF No. 140; Min. Order, ECF No. 142.

## II.  LEGAL STANDARD

A defendant's counterclaims are held to the same pleading standard as the claims in a plaintiff's complaint. *Lennar Mare Island, LLC v. Steadfast Ins. Co.*, 139 F. Supp. 3d 1141, 1157 (E.D. Cal. 2015). A party may move to dismiss a counterclaim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The motion may be granted if the counterclaim lacks a "cognizable legal theory" or if its factual allegations do not support a cognizable legal theory. *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). The court assumes all factual allegations are true and construes "them in the light most favorable to the nonmoving party." *Steinle v. City & Cnty. of San Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019) (quoting *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995)). If the counterclaim's allegations do not "plausibly give rise to an entitlement to relief," the motion must be granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

A counterclaim need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But this rule demands more than unadorned accusations; "sufficient factual matter" must make the claim at least plausible. *Iqbal*, 556 U.S. at 678. In the same vein, conclusory or formulaic recitations of elements do not alone suffice. *Id.* (citing *Twombly*, 550 U.S. at 555). The court's evaluation of plausibility is a context-specific task drawing on "judicial experience and common sense." *Id.* at 679.

When a party alleges "fraud or mistake," however, its claim "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Even if fraud is not an essential element of a particular claim, when that claim is "grounded in fraud" or "sound[s] in

4

fraud," then the factual allegations must explain the circumstances of the underlying fraud with particularity. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003) (citations omitted). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Id.* at 1106 (citation omitted).

### III.  DISCUSSION

The court must answer two threshold questions before it considers whether X-Body's disputed counterclaims satisfy this pleading standard. First, the parties dispute whether several of the counterclaims sound in fraud and are thus subject to Rule 9(b). ASR argues counterclaims 4, 5, 7, 8, 9, 10 and 11 sound in fraud, as this court held in its previous order. *See* Mem. at 3–4; Reply at 5–7; Prev. Order at 7–8. X-Body does not dispute that the seventh counterclaim is subject to Rule 9(b), but it argues the other disputed counterclaims -- 4, 5, 8, 9, 10, and 11 -- do not sound in fraud. *See* Opp'n at 2–5.

For counterclaims 4, 5 and 8, X-Body argues it need not comply with Rule 9(b) because fraud is not an essential element of its claims under state law. *See, e.g.*, Second Am. Countercl. ¶¶ 49, 63, 93; Opp'n at 3. The Ninth Circuit rejected this argument expressly in *Vess*, 317 F.3d at 1103 ("[The plaintiff] argues that Rule 9(b) does not apply at all in this case because the state statutory claims he asserts do not require a showing of fraud. [He] is correct that fraud is not an essential element of the California statutes on which he relies. But he is not correct in concluding that his averments of fraud therefore escape the requirements of the rule." (citation omitted)). This court also explained in its previous order, citing *Vess*, that even "[c]laims that do not have fraud as an essential element may nonetheless be 'grounded in fraud' or 'sound in fraud' when they rely on an allegation of a unified course of fraudulent conduct." Prev. Order at 7.

For counterclaims 9, 10 and 11, X-Body argues it has revised its allegations to avoid relying on a theory that ASR's actions were fraudulent. It has not. Counterclaims 9, 10 and 11 expressly incorporate all of X-Body's fraud allegations. *See* Second Am. Countercl. ¶¶ 97, 107, 115, 121. The disputed counterclaims also each include independent allegations of fraud. *See id.* ¶ 87 (alleging ASR "made factual misrepresentations about X-Body"); *id.* ("the statements were malicious"); *id.* ¶ 88 ("ASR's statements were false and known to be false"); *id.* ¶ 93 (alleging

5

1    ASR used "misleading and incorrect statements"); *id.* ¶ 98 (alleging ASR's statements "were
2    false and misleading"); *id.* ¶ 103 ("The false and misleading statements deceived . . .
3    customers . . . ."); *id.* ¶ 104 (referring to ASR's "deception"); *id.* ¶ 108 ("The acts described
4    above constitute . . . fraudulent conduct."); *id.* ¶ 110 ( "ASR's conduct . . . was . . . fraudulent.");
5    *id.* ¶ 117 ("[I]ndividuals subject to the duty of candor . . . engaged in inequitable conduct . . . by
6    withholding information with the intent to deceive the United States Patent and Trademark Office
7    . . . ."); *id.* ¶¶ 148–150 (alleging ASR pursued "sham patent infringement lawsuits" that "were
8    objectively baseless"); *id.* ¶ 157 (alleging ASR has pursued "knowingly baseless and defective
9    patent monopoly allegations" and is "continuing its deception on the marketplace with this case").
10   For these reasons, the court finds now, as before, that the disputed counterclaims sound in fraud
11   and are subject to the pleading requirements of Rule 9(b).[2]

12   After this court concluded in its previous order that X-Body's disputed counterclaims
13   sounded in fraud and were subject to Rule 9(b), the court granted X-Body leave to amend with
14   the express warning that "[a]ny amendment must comply fully with Federal Rule of Civil
15   Procedure 11." Prev. Order at 8. Under Rule 11(b)(2), an attorney who files a document in this
16   court certifies that claims and legal contentions "are warranted by existing law or by a
17   nonfrivolous argument for extending, modifying, or reversing existing law for establishing new
18   law." Defense counsel is **ordered to show cause** why the court should not impose monetary
19   sanctions under Rule 11(b)(2) based on (a) counsel's argument that counterclaims 4, 5, 8, 9, 10
20   and 11 need not be pleaded with particularity, and (b) X-Body's failure to comply with this
21   court's warning that any amended counterclaims must comply with Rule 11.

22   The second threshold question relates to the letters ASR sent to X-Body's customers. As
23   summarized above, X-Body did not attach copies of these letters to its counterclaims, but ASR

---

[2] To the extent X-Body's arguments in opposition to ASR's motion can be construed as an implicit request for reconsideration of this court's previous conclusion that Rule 9(b) applies to its counterclaims, that motion is denied. "Generally, motions for reconsideration are disfavored, and are not the place for parties to make new arguments not raised in their original briefs. Nor is reconsideration to be used to ask the Court to rethink what it has already thought." *Gray v. Golden Gate Nat. Recreational Area*, 866 F. Supp. 2d 1129, 1132 (N.D. Cal. 2011) (citations omitted).

has filed copies of the letters and asks the court to rely on them. *See* Nielsen Decl. Ex. 1; Frankel Decl. Ex. 1; Mem. at 1–2.

"Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a [pleading] under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). Courts have made an exception to this general rule for documents "incorporated" into a pleading "by reference." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). If a pleading refers "extensively" to a particular document, or if a document "forms the basis" of a claim, the court may consider the whole document, even if the pleading does not describe its contents, assuming the parties do not dispute the document's authenticity. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). "This doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Khoja*, 899 F.3d at 1002.

X-Body's counterclaims cite the customer letters extensively, and those letters undergird X-Body's fundamental theory of ASR's wrongdoing: that ASR uses baseless threats of patent litigation to undermine X-Body's business. X-Body does not dispute the letters' authenticity. It relies on them itself in opposing the pending motion. *See, e.g.*, Opp'n at 7. The court incorporates the letters into the pleadings by reference, so it may consider them.

With these threshold questions resolved, the court turns to the substance of ASR's motion. ASR relies first and foremost on arguments that it is immune to liability under the *Noerr–Pennington* doctrine and related preemption rules, under the California litigation privilege, or both. *See* Mem. at 4–11. These doctrines raise difficult and sensitive questions about interactions among federal constitutional law, federal statutory law and state law. The court need not consider these questions at this time. Even if ASR were entitled to no immunity at all, the result would be the same. X-Body has not stated a claim on which relief could be granted, as explained below.

**A.      Interference with Economic Relations (Counterclaims 4 and 5)**

In the first disputed counterclaim, counterclaim four, X-Body alleges ASR intentionally interfered in its existing and prospective economic relationships in violation of California law. *See* Second Am. Countercl. ¶¶ 38–50.  The fifth counterclaim is similar.  X-Body alleges in the alternative that ASR interfered in the same relationships negligently, again in violation of California law.  *See id.* ¶¶ 51–64.

"California has traditionally recognized two economic relations torts: interference with the performance of a contract and interference with a prospective economic relationship." *Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130, 1140–41 (2020) (citations omitted).  Until 1995, the California Supreme Court treated these two theories of liability "as two species of the same tort." *Id.* at 1141 (citing *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376 (1994)).  "Each tort contained the same elements with the exception that interference with contractual relations required the existence of a binding contract." *Id.*  But in *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, the state supreme court "held that a plaintiff seeking to recover damages for interference with prospective economic advantage must plead as an element of the claim that the defendant's conduct was 'wrongful by some legal measure other than the fact of interference itself.'" *Id.* at 1142 (quoting 11 Cal. 4th at 393).  "Intentionally inducing or causing a breach of an existing contract," by contrast, is "a wrong in and of itself." *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 55–56 (1998).  *But see Ixchel*, 9 Cal. 5th at 1148 (holding that for at-will contacts, a plaintiff must also allege the defendant engaged in an independently wrongful act).

As a result, under current California law, the elements of a claim for interference with an existing economic relationship are (1) "a valid contract between the plaintiff and a third party;" (2) "the defendant's knowledge of that contract;" (3) "intentional acts designed to induce a breach or disruption of the contractual relationship;" (4) "actual breach or disruption"; and (5) "resulting damage." *Reeves v. Hanlon*, 33 Cal. 4th 1140, 1148 (2004).  The elements for a claim about prospective economic relationships, by contrast, are (1) "the existence, between the plaintiff and some third party, of an economic relationship that contains the probability of future economic

benefit to the plaintiff;" (2) "the defendant's knowledge of the relationship;" (3) "intentionally wrongful acts designed to disrupt the relationship," which acts are wrongful by some legal measure other than the fact of interference itself; (4) "actual disruption of the relationship;" and (5) "economic harm proximately caused by the defendant's action." *Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.*, 2 Cal. 5th 505, 512 (2017) (citation omitted).

For claims about current relationships, a defendant must have acted intentionally; California recognizes no negligent tort for interference with an existing relationship. *See Fifield Manor v. Finston*, 54 Cal. 2d 632, 636 (1960); *Davis v. Nadrich*, 174 Cal. App. 4th 1, 9 (2009). In a claim about prospective relationships, by contrast, a plaintiff can succeed by alleging and proving the defendant acted negligently. *See J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 805–06 (1979); *Venhaus v. Shultz*, 155 Cal. App. 4th 1072, 1078 (2007).

X-Body alleges ASR interfered with both current and future relations, and it alleges both intentional and negligent interference. Beginning with the claims about current relationships, the negligence claim cannot succeed. As noted, California does not permit contract interference claims based on negligent conduct. *See Davis*, 174 Cal. App. 4th at 9. And for the claim of intentional interference, X-Body does not allege any customers or other parties breached contracts that were already in place. The customer letters attached to ASR's motion do not suggest any contracts were breached. The absence of such an allegation precludes any plausible inference of success on claims about existing contracts. *See P. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990) (noting "valid contract" with third party is one element of claim about existing relationships). X-Body has not stated any interference claims based on current relationships.

Turning, then, to prospective economic relationships, X-Body could succeed only by proving it had at least one relationship with "the probability of future economic benefit" and that ASR actually disrupted that relationship, causing damages. *Roy Allan*, 2 Cal. 5th at 512; *Venhaus*, 155 Cal. App. 4th at 1078. X-Body offers only generalized allegations about its relationships with customers, the possibility of future benefits and damages. It alleges it had "relationships with various end-users in the industry holding the probability of future economic

benefits," Second Am. Countercl. ¶¶ 39, 52, and that after ASR's alleged interference, X-Body "has not done the level of business it would otherwise have done" in the past and "has been damaged," *id.* ¶¶ 42, 57. These allegations simply reiterate the elements of a claim under state law. They do not rise "above the speculative level," *Twombly*, 550 U.S. at 555, or state with "particularity" the circumstances of the fraud that underlies X-Body's theory of relief, Fed. R. Civ. P. 9(b). The customer letters attached to ASR's motion do not fill in these gaps. Counterclaims four and five are dismissed.

### B.      Defamation (Counterclaim 7)

Under California law, defamation is "the intentional publication of a statement of fact which is false, unprivileged, and has a natural tendency to injure or which causes special damage." *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1157 (9th Cir. 2021) (quoting *Gilbert v. Sykes*, 147 Cal. App. 4th 13, 27 (2007)). "Because the challenged speech must be a statement of fact, the threshold question in every defamation suit is 'whether a reasonable factfinder could conclude that the [contested] statement implies an assertion of objective fact.'" *Id.* (quoting *Unelko Corp. v. Rooney*, 912 F.2d 1049, 1053 (9th Cir. 1990)) (alterations in *Herring*). "If the answer is no, the claim is foreclosed by the First Amendment." *Id.* (quoting *Gardner v. Martino*, 563 F.3d 981, 987 (9th Cir. 2009)).

X-Body's defamation claims rest on its allegations about ASR's letters to the two named X-Body customers and on less specific allegations about other communications and other unnamed customers. *See* Second Am. Countercl. ¶¶ 77–80. The letter to the first customer states ASR's opinion that the customer "may be infringing" ASR's patent based on that customer's "use of the Acculoader machine." Nielsen Decl. Ex. 1 at 1. It reports ASR's belief "that the Acculoader is within the scope of at least several claims of the patent." *Id.* at 2. The letter to the second customer is similar. *See generally* Frankel Decl. Ex. 1. It states ASR's belief that a recently issued patent covers "the method for loading containers, and the devices for loading sea containers, including the Acculoader container loader." *Id.* These letters cannot support a defamation claim because they state opinions and legal conclusions, not facts.

1    X-Body does not say what false statements of fact ASR made in any other allegedly defamatory communications. It alleges only in general terms that these statements were false or misleading and defamatory. California courts require plaintiffs to specifically identify the "words constituting an alleged libel," or at least allege their substance, in a complaint. *Kahn v. Bower*, 232 Cal. App. 3d 1599, 1616 n.5 (1991). Federal courts have long enforced this rule. *See, e.g.*, *Jones v. Thyssenkrupp Elevator Corp.*, No. 05-3539, 2006 U.S. Dist. LEXIS 13978, at *16 (N.D. Cal. Mar. 14, 2006) (collecting authority). X-Body's claim also sounds in fraud, so it must allege the circumstances of the fraud with particularity. *See* Fed. R. Civ. P. 9(b). The generalized allegations it offers in support of its defamation counterclaim do not suffice to state a claim and again fall short of the particularity requirement in Rule 9(b). This counterclaim is dismissed.

### C.  Commercial Disparagement (Counterclaim 8)

Commercial disparagement is also known as "trade libel." *Hartford Cas. Ins. Co. v. Swift Distribution, Inc.*, 59 Cal. 4th 277, 289 (2014). Trade libel is a type of injurious falsehood. *Id.* It is "an intentional disparagement of the quality of property, which results in pecuniary damage to plaintiff." *Atl. Mut. Ins. Co. v. J. Lamb, Inc.*, 100 Cal. App. 4th 1017, 1035 (2002) (quoting *Nichols v. Great Am. Ins. Cos.*, 169 Cal. App. 3d 766, 773 (1985)). In this context, "disparagement" means "the publication of matter derogatory to the plaintiff's title to his property, or its quality, or to his business in general." *Id.* (quoting *Nichols*, 169 Cal. App. 3d at 773). To prevail, the party asserting a claim of trade libel must ultimately prove the publication "played a material and substantial part inducing others not to deal with him, and that as a result he has suffered special damages," usually the "loss of prospective contracts" with customers. *Id.* (quoting *Nichols*, 169 Cal. App. 3d at 773).

Under federal pleading rules, "[i]f an item of special damage is claimed, it must be specifically stated." Fed. R. Civ. P. 9(g). X-Body's counterclaim does not specifically state special damages. It makes only general claims on information and belief. *See, e.g.*, Second Am. Countercl. ¶ 93. As summarized above, the counterclaim also lacks factual allegations explaining what business X-Body lost and what damages it suffered. X-Body does not claim its customers canceled any contracts or reneged on any deals. This counterclaim is dismissed.

11

**D.      Lanham Act and Related State Claims (Counterclaims 9 and 10)**

To prevail on a claim of false advertising under the Lanham Act, a plaintiff must ultimately prove, among other things, that the defendant made "a false statement of fact . . . in a commercial advertisement about its own or another's product." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) (footnotes omitted and line breaks added).

X-Body relies on the same allegations for this claim as its defamation and trade libel claims. *Compare* Second Am. Countercl. ¶¶ 98–106 (Lanham Act) *with id.* ¶¶ 75–83 (defamation) *and id.* ¶¶ 86–95 (trade libel). As explained in section III.B above, the counterclaim does not include factual allegations to support its generalized claim that ASR made false statements of fact. The two customer letters state legal opinions and beliefs, not facts, and the remaining allegations of false statements fall short of federal pleading standards by alleging conclusions rather than facts. *See Iqbal*, 556 U.S. at 678. Nor can the court infer ASR's statements were "made in a classic advertising campaign" or otherwise "disseminated sufficiently to the relevant purchasing public," as X-Body would ultimately be required to prove. *Coastal Abstract Serv. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999) (quotation marks omitted) (quoting *Gordon & Breach Sci. Publishers v. Am. Inst. of Physics*, 859 F. Supp. 1521, 1535–36 (S.D.N.Y. 1994)). X-Body does not explain "with particularity," Fed. R. Civ. P. 9(b), who made what false claims, where, when and to whom, *Vess*, 317 F.3d at 1106. The tenth counterclaim is dismissed.

X-Body asserts similar competition claims under state law. *See* Second Am. Countercl. ¶¶ 107–114 (citing Cal. Bus. & Prof. Code § 17200 and Ore. Rev. Stat. 646.607). The Ninth Circuit "has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act." *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994) (quoting *Acad. of Motion Picture Arts & Scis. v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1457 (9th Cir. 1991)). In addition, "only the state can prosecute trade practices declared unlawful by ORS 646.607." *Horton v. Nelson*, 252 Or. App. 611, 619 (2012). The ninth and tenth counterclaims are dismissed.

   **E.**  **Sherman Act—Attempted Monopolization (Counterclaim 11)**

  "[T]o state a claim for attempted monopolization, the plaintiff must allege facts that, if true, will prove: '(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power.'" *Coal. for ICANN Transparency, Inc. v. VeriSign, Inc.*, 611 F.3d 495, 506 (9th Cir. 2010) (quoting *Cascade Health Sol'ns v. PeaceHealth*, 515 F.3d 883, 893 (9th Cir. 2008)).

  X-Body alleges generally that ASR's actions are "predatory" and "anticompetitive," *see, e.g.*, Second Am. Countercl. ¶ 144, but its factual allegations do not support those claims. It alleges only that ASR has locked unspecified customers into a costly "Arbitrage Scheme" by filing "a series of sham patent infringement lawsuits against X-Body, its principal supplier Jewell, and X-Body's customers who spoke out against ASR's predatory practices." Second Am. Countercl. ¶¶ 148, 154. X-Body does not allege how many customers were sued or locked into a scheme of high prices or who these customers were, but it appears to be referring to the same two customers cited in its other claims. For these two customers, X-Body makes only generic claims about lost business, as noted above. *See supra* section III.A. Nor does X-Body offer examples of lawsuits or claims against customers who have decided not to use Acculoaders after receiving threats.

  Nor do X-Body's factual allegations plausibly suggest an ASR monopoly is a "dangerous probability." *Coal. for ICANN Transparency*, 611 F.3d at 506 (quoting *Cascade Health*, 515 F.3d at 893). X-Body's theory of a probable monopoly rests on only a brief claim, asserted on information and belief, that ASR controls 60 percent or more of the North American market. Second Am. Countercl. ¶ 127. "A mere showing of substantial or even dominant market share alone cannot establish market power sufficient to carry out a predatory scheme." *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1439 (9th Cir. 1995). "[M]arket share does not necessarily equal market or monopoly power, which further requires an assessment of such factors as ease of entry." *SmileCare Dental Grp. v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 783 n.2 (9th Cir. 1996). "Dismissal for failure to state a claim is appropriate where 'the [pleading] states no set of facts which, if true, would constitute an antitrust offense, notwithstanding its conclusory language

1 regarding the elimination of competition and improper purpose.'" *Id.* (quoting *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 735 (9th Cir. 1987)). Counterclaim 11 is thus dismissed.

### IV. CONCLUSION

When claims are dismissed because a pleader has not supported them with factual allegations, district courts ordinarily grant leave to amend. *See Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013). If a party has already received that opportunity, however, and if its amendment has again fallen short, then a district court's "discretion to deny leave to amend is 'particularly broad.'" *Id.* (quoting *Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996)). This court dismissed X-Body's disputed counterclaims in its previous order after explaining those claims lacked support in factual allegations. *See* Prev. Order at 8. The amended counterclaims have again fallen short of Rules 8(a) and 9(b). X-Body does not request leave to amend in the alternative, and it does not identify any allegations it would add if it were granted leave to amend. The motion to dismiss counterclaims 4, 5, 7, 8, 9, 10 and 11 is thus **granted without leave to amend**.

Counsel for X-Body is **ordered to show cause within fourteen days** why it should not be sanctioned for violating Rule 11(b)(2) by (a) arguing that counterclaims 4, 5, 8, 9, 10 and 11 need not be pleaded with particularity and (b) not complying with this court's previous warning that any amended counterclaims must comply with Rule 11.

A status conference is set for **March 10, 2022, at 2:30 p.m.** before the undersigned. The status conference will proceed by video conferencing through the Zoom application. The Courtroom Deputy will provide counsel with the hearing access information no later than one day before the conference. The parties shall file a joint status report **no later than fourteen days prior** to the conference.

This order resolves ECF No. 137.

IT IS SO ORDERED.

DATED: February 8, 2022.

CHIEF UNITED STATES DISTRICT JUDGE